MARY A. SEITNER v. A. E. RANSOM and Others.[1]

February 8, 1901.

Nos. 12,324—(204).

### Act of Police Officer—Liability of His Sureties.

In attempting to direct the movements of a team upon a public highway within a city, a police officer caused an injury to the occupant of the wagon. *Held*, under the testimony, that it was a question for the jury whether the officer was at that time acting as a private person, or in the capacity of police officer, and whether more force was used than necessary. *Held*, if the officer was acting within his official capacity, then the sureties on his official bond are liable for the result of his unnecessary conduct. *Held*, it was error to dismiss the case as to the sureties.

[1] Reported in 85 N. W. 158.

Action in the district court for Freeborn county to recover $500 for personal injuries. The principal defendant was chief of police of the city of Albert Lea, and the two other defendants were sureties on his official bond. The case was tried before Kingsley, J., who at the close of plaintiff's testimony granted a motion to dismiss the action as against defendant sureties. From an order denying a motion for a new trial as against the sureties, plaintiff appealed. Reversed.

*Henry A. Morgan* and *H. H. Dunn*, for appellant.

*H. C. Carlson*, for respondents.

LEWIS, J.[2]

Action to recover damages against defendant A. E. Ransom and his sureties for injuries claimed to have been inflicted by him while acting in his official capacity of chief of police of the city of Albert Lea. At the close of the testimony on the trial below the court dismissed the action as to the sureties, and the only question involved in this appeal is the liability of the sureties. The condition in the bond is as follows:

"Now, therefore, if the said A. E. Ransom shall, will, and does faithfully discharge all his duties as such chief of police in and for said city of Albert Lea, then this obligation to be void, otherwise to remain in full force and effect."

The plaintiff and her husband resided on a farm about five miles from Albert Lea. Upon one of the main thoroughfares leading into the city there is a bridge about thirty feet long, over a stream which is within the city limits. This bridge is separated into two driveways, divided by a wooden rail. On the evening of August 6, 1895, plaintiff and her husband were riding into the city in a one-seated light wagon, the husband driving a rather spirited team of horses. As they approached the bridge they started to drive upon the southerly driveway, instead of the one to the north, which was on the right as they were traveling. The reason assigned for turning to the left was that there was a hole in the approach on the right-hand side. As the horses stepped onto the bridge, Ransom and his wife had advanced from the other end of

[2] LOVELY, J., having been of counsel, took no part.

the bridge on the same driveway, riding on bicycles. Ransom called out, "Turn to the right," but the team advanced. Ransom dismounted, turned his wheel over to his wife, advanced with threatening language, took the team by the bits, jerked the horses back so suddenly as to throw plaintiff from the seat onto the wagon front, and caused the injuries complained of.

The question is, was there any substantial evidence, sufficient to go to the jury, as to the capacity in which Ransom was acting? Was he acting as chief of police or as a private citizen? If he was off duty, and was simply engaged in an unseemly private encounter with plaintiff and her husband because they assumed to get in his way, then his sureties are not liable for his acts. But if, although dressed in citizen's clothes, he was assuming to exercise the duties of his office, either in making an arrest or in compelling obedience to his orders to turn to the right, and unnecessarily caused the injury, then his sureties are liable. Under the charter of Albert Lea the police officers are possessed with the powers of constables at common law and by the laws of the state. The chief of police had authority in a reasonable manner to direct the driver of the team to take the right-hand driveway, if, in his judgment, such course would inure to the good order and regulation of the bridge traffic at that time. Or if the driver was proceeding in a reckless manner to pass over, without regard to the rights of those meeting him upon bicycles, the officer had a right summarily to stop the team for the purpose of avoiding an accident or a disturbance; and, if it became necessary to arrest the driver in order to prevent a disturbance or accident, then he had the power so to do, and, if committed in his presence, without a warrant.

While the testimony of the driver, plaintiff's husband, is somewhat indefinite as to the order in which the occurrences took place, the plaintiff's testimony is quite clear. It was to the effect that after calling upon the husband to turn to the right, and after the team had advanced and stopped in front of Ransom, his wife called out, "Do you know who this gentleman is?" and, plaintiff's husband having replied, "No," she said, "It is the chief of police of Albert Lea;" and thereupon the officer unbuttoned his coat, and

showed a star which was fastened upon his suspender. This took place before he seized the team and jerked them back. From this testimony it does not appear conclusively that Ransom was acting as a private person. On the contrary, it indicates that as chief of police he assumed to direct the movements of the team. He was charged, as a conservator of the peace, with the power to command the peace upon the public highway. There may have been no occasion for his interference with the team at that time, but the nature of his act as an officer was not changed because his interference was unwarranted, or because he used more force than necessary either to turn the team back, to quell a disturbance, or to cause an arrest. If he assumed to act as an officer of the law, his sureties are responsible, if his conduct was not in the faithful discharge of his duties.

For these reasons the court was in error in dismissing the case as to the sureties, and the order denying a new trial is reversed, and a new trial granted.