CYRUS E. HALL v. JOHN TIERNEY and Others.[1]

May 29, 1903.

Nos. 13,492, 13,483—(101, 102).

Official Bond.

    The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it.

Action against Sheriff—Pleading.

    *Held*, in an action brought against a sheriff and his sureties upon his official bond, that each of two separate and distinct causes of action were sufficiently stated in the complaint, as against a general demurrer.

Action in the district court for Anoka county against defendants, John Tierney and others, as principal and sureties, to recover $5,000 upon the official bond of defendant Tierney, as sheriff of said county. From an order, Giddings, J., overruling defendant Tierney's demurrer to the complaint and sustaining the separate demurrer of the other defendants, plaintiff and defendants severally appealed. Affirmed as to demurrer of defendant Tierney; reversed as to demurrer of the other defendants.

*Geo. H. Selover* and *Arthur W. Selover*, for plaintiff.

*Albert F. Pratt* and *C. D. & Thos. D. O'Brien*, for defendants.

COLLINS, J.

This action was brought against a sheriff and his sureties upon his official bond to recover for bodily injuries alleged to have been received by the plaintiff at the hands of such sheriff, who demurred generally to the complaint, while the sureties interposed a separate general demurrer. The court below sustained the demurrer interposed by the sureties, but overruled that of the sheriff. Both parties appealed, and the causes were submitted and argued together.

Two causes of action were attempted to be set forth in the com-

[1] Reported in 95 N. W. 219.

plaint. After formal allegations, it was averred, as a first cause of action, that defendant sheriff, with two or more deputies, came to plaintiff's premises and demanded possession of certain cattle described in a chattel mortgage which had theretofore been executed and delivered by plaintiff to the Deering Harvester Company; that plaintiff refused to deliver the cattle unless shown proper papers in replevin; that the defendant sheriff refused to produce any such papers, but did present a certain written notice of a foreclosure sale of said mortgage, a copy of which notice he had previously served upon the plaintiff, and claimed the right to take the cattle by virtue of said notice; that plaintiff protested and remonstrated with the sheriff and his deputies; that they forcibly entered upon his premises and attempted to remove the cattle, and while he was endeavoring to protect his property they assaulted and maltreated him, wilfully and maliciously, and struck him and beat him, to his great injury. Further allegations are found in the complaint concerning the details of this alleged assault and battery, and it was also further averred

"That in each and every act and thing aforesaid said defendant Tierney acted and claimed to act officially, as the sheriff of the said county of Anoka, and not otherwise."

As a second cause of action, it was alleged that on the same day, and immediately after the assault and battery before mentioned, the defendant did forcibly and against plaintiff's will take and carry him away from his premises and restrain him from his liberty, taking him to the city of Anoka, a distance of about eight miles, and did then and there incarcerate him in the common jail of the county, and lock him up and restrain him from his liberty for more than twenty-four hours, and, further,

"That such action was taken by defendant Tierney as sheriff of the said county, in his official capacity, and was wholly without warrant of law, malicious, unlawful and wanton, and without any just cause whatsoever."

The bond was conditioned, as required by law, that the defendant Tierney should

"Well and faithfully in all things perform and execute the duties of sheriff, according to law, during his continuance in office, without fraud, deceit or oppression."

In earlier days a very marked distinction was made in actions brought upon official bonds between acts done by the principal virtute officii, defined as those within the limits of his authority, but which he had performed improperly, and for which his sureties were liable, and acts done colore officii, defined as acts of such a character that his office gave him no authority to perform, and for which his sureties were not liable. And this attempted distinction led to very much refinement and fanciful reasoning by the courts, as will be seen upon examining the authorities. Although this distinction is not specifically referred to in the case of Dorr v. Mickley, 16 Minn. 8 (20), it might well have been, because the decision in that case was really put upon the ground that an officer might perform acts under color of his office which were not performed by virtue of his office, because not within the scope of his duties, and therefore unofficial. But of later years, and certainly in this court, this refined and fanciful distinction has been disregarded, and it has been held, in effect, that for improper acts performed by an officer under color of his office the sureties upon his bond can be held liable.

Perhaps the first of the cases which have a bearing upon this question is State v. Wedge, 24 Minn. 150, where an officer was charged with the corrupt performance of an act alleged to have been beyond and outside of his authority as a county attorney. He assumed to act officially and under his official designation, and, in a manner likely to deceive and mislead others, wrongfully approved a bond, whereby an alleged criminal escaped arrest. It was held that he was guilty of misbehavior in office; the reasoning being "that it is as much his duty as an officer to refrain from corruptly usurping or assuming powers not pertaining to his office, as to refrain from corruptly exercising those which properly belong to it." The noted case of State v. Leach, 60 Me. 58, was referred to and followed. Although the liability of sureties upon the officer's bond was not involved in the Wedge case, it would

seem to follow from the conclusion that he was guilty of mis-
behavior or malfeasance in office that his sureties would be liable,
and be obliged to respond in damages, if there were any.

There are other cases which are in point. Caldwell v. Arnold,
8 Minn. 231 (265); Hursey v. Marty, 61 Minn. 430, 63 N. W. 1090.
And in the recent case of Seitner v. Ransom, 82 Minn. 404, 85 N.
W. 158, the liability of sureties upon the bond of a police officer
was considered, and the whole subject covered and very concisely
stated. If, said Justice LEWIS, writing the opinion, he assumed
to act as an officer of the law, his sureties are responsible for his
conduct, although he was not in the faithful discharge of his
duties. See also Board Co. Commrs. v. Sullivan, supra, page 68.

The defendant's official bond now under consideration was con-
ditioned that he should well and faithfully in all things perform
and execute the duties of sheriff according to law, and without
fraud, deceit, or oppression. If he claimed and pretended to act
as sheriff when visiting the plaintiff's premises, surely his con-
duct while he was assuming to act officially was both unfaithful
and oppressive. The distinction between a case where the sheriff
acts as an individual, and not by color or virtue of his office, and
where he acts as such an officer, is obvious. In the present case
the sheriff would have had the right, had he been armed with pro-
cess of law, to take and remove these cattle. He went to plain-
tiff's premises for that purpose, demeaning himself as an officer
in and about an act which he had a right to perform officially.
He could have lawfully seized the cattle, but he was without au-
thority so to do. He was an officer having the right, when armed
with proper papers, to seize the cattle; and he professed to have
authority, and took the property. He had no suitable or sufficient
process, and his act cannot be distinguished from a taking under
a void or insufficient writ. The case is precisely as if, armed with
proper authority to seize the cattle of another man, he had taken
plaintiff's, or precisely as if, armed with the proper authority to
levy upon plaintiff's property not exempt by law, he had seized and
taken away property which was exempt. Such an act, although

unlawful, is one done by the officer under color and by virtue of his office, and constitutes a breach of the condition of the bond. Hursey v. Marty, supra.

It must not be forgotten that it is alleged in this complaint that defendant sheriff claimed the right to take the cattle by virtue of the foreclosure notice, and that in each and every step taken he claimed to act officially as the sheriff of the county. By an "official act" is not meant the lawful act of an officer in the service of process, for, if this were so, his sureties would never be responsible. It means any act done by the officer in his official capacity under color and by virtue of his office. Turner v. Sisson, 137 Mass. 191.

The distinction originally made between acts done by virtue of an office and acts done by color of office has been entirely disregarded by leading authorities within the past few years. Murfree, Sheriffs, § 60; Lemmon v. Feusier, 111 U. S. 17, 4 Sup. Ct. 286; Clancy v. Kenworthy, 74 Iowa, 740, 35 N. W. 427; Brown v. Weaver, 76 Miss. 7, 23 South. 388; Warren v. Boyd, 120 N. C. 56, 26 S. E. 700; Mitchell v. Mahone, 77 Ga. 301. "The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it." Murfree, Off. Bonds, § 211.

As against a general demurrer, the first cause of action was sufficiently and properly stated. And so was the second cause of action. It was alleged that, claiming to act officially and in his official capacity, the sheriff seized and carried the plaintiff to the jail of the county, where he locked him up for twenty-four hours, wholly without warrant of law, and maliciously and wantonly. Under G. S. 1894, § 7120, the right is given the sheriff to arrest a person without a warrant, and it has been held in this state that, whether a sheriff arrests under a warrant or under the authority thus given by statute (that is, without a warrant), he acts in his official capacity. Warner v. Grace, 14 Minn. 364 (487). As a

peace officer, the sheriff arrested and incarcerated the plaintiff in jail. He made this arrest without a warrant, and in so doing acted officially, and, it is alleged, without authority of law. For his misbehavior and malfeasance in this respect, certainly, his sureties must be liable. To hold that the defendant sheriff was not acting officially when he arrested and imprisoned the defendant for twenty-four hours in the county jail, over which he presides, and, under the statute, exercises supreme authority, is not to be thought of in any civilized country.

The order of the court below upon the demurrer interposed by the sheriff is affirmed, while the order upon the demurrer of the sureties is reversed, and the case remanded for further proceedings.