### W. L. KING v. R. J. BROWN ET AL.

#### No. 1574. Decided June 27, 1906.

**1.—Arrest—Offense in Presence of Officer.**

An offense is committed in the presence or view of an officer, within the meaning of the law authorizing him, in such case, to arrest for felony or breach of the peace, without warrant (Code Crim. Proc., art. 226), when it was committed by firing pistols on a public road within two hundred to two hundred and fifty yards of the officer, who saw the flash of the pistols and the parties who discharged them. (Pp. 111, 112.)

**2.—Sheriff—Liability for Deputy—Official Act.**

The act of a deputy sheriff is an official one, for which the sheriff is liable when it consists in wrongfully wounding a man in his attempted arrest, under the mistaken belief that he was the person who had just committed a breach of the peace in the presence of the deputy, by firing a pistol on a public road. (Pp. 112, 113.)

**3.—Same—Lawfulness of Arrest.**

It is not necessary that the deputy's act be lawful to make it an official one for which the sheriff is liable. (Pp. 111, 112.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Clay County.

King sued Brown and others and recovered judgment. Brown appealed and the judgment against him was reversed and rendered in his favor. King thereupon procured writ of error.

*W. T. Allan, R. E. Taylor* and *J. T. Montgomery,* for plaintiff in error.—The undisputed evidence in this case shows that at the time of inflicting the injury for which the plaintiff sued, the defendants, Allen and Cozart, were deputy sheriffs, duly appointed by R. J. Brown, sheriff of Clay County, Texas, and further shows, that at the time of inflicting said injury, they were acting as peace officers officially attempting to preserve the peace within Clay County. The evidence further shows that they were attempting to arrest the plaintiff for an alleged violation of law which had occurred within their view and presence, and further, were attempting to prevent a violation of the law, to-wit: the unlawful carrying of arms, and therefore their acts were official and the sheriff liable therefor. Rev. Stats., arts. 4896, 4897; Code of Cr. Pro., arts. 247, 248, 250, 251; Code Cr. Pro., art. 44; Penal Code, arts. 338, 339, 342; Lock v. Zapp, 21 S. W. Rep., 418; Newburn v. Durham, 32 S. W. Rep., 112, 115; Goodale v. Douglas, 24 S. W. Rep., 966; Moore v. Lindsay, 71 S. W. Rep., 298; Hayes v. Creary, 60 Texas, 445; Clark v. Winn, 46 S. W. Rep., 915; Wolf v. Perryman, 82 Texas, 120; West v.

Cabell, 153 U. S., 87; Knowlton v. Bartlett, 1 Pick., 273; Johnson v. Williams, 54 L. R. A., 220; Stephenson v. Sinclair, 14 Texas Civ. App., 133; Hall v. Terney, 89 Minn., 407, 95 N. W. Rep., 219; Comstock Stove Co. v. Caulfield, 95 N. W. Rep., 783; 2 Current Law, p. 1646; Brown v. Weaver, 42 L. R. A., 423.

*Freeman & Batsell* and *Wolfe, Hare & Maxey,* for defendant in error.—The acts of Allen and Cozart were without the knowledge or concern of their principal, R. J. Brown, and they were not acting or purporting to act by virtue of any warrant, and were not in the performance of any duty imposed upon them by law, and their conduct in shooting appellee was not an official act for which Brown, as sheriff, was responsible. Guaranty against unreasonable seizure and searches: Const. Texas, art. 1, sec. 9; Shields v. State, 16 So. Rep., 87; A sheriff is responsible only for the official acts of his deputy: Rev. Stats., art. 4897; Maddox v. Hudgeons, 72 S. W. Rep., 414; Hamilton v. Ward, 4 Texas, 336; Haley v. Greenwood, 28 Texas, 680; Thomas v. Browder, 33 Texas, 784; Heidenheimer v. Brent, 59 Texas, 533; Hollman v. Carroll, 27 Texas, 23; Morris v. Kasling, 15 S. W. Rep., 227; Cortez v. State, 69 S. W. Rep., 536; Montgomery v. State, 65 S. W. Rep., 540; Russell v. State, 37 Texas Crim. App., 317; Lacy v. State, 7 Texas Crim. App., 413; Alford v. State, 8 Texas Crim. App., 561; Pickett v. State, 25 S. E., 609; Williams v. State, 28 S. E., 629; Grumon v. Raymond, 6 Am. Dec., 203; Whitaker v. Barnes, 45 Wis., 204; State v. Wade, 40 Atl. Rep., 104, 40 L. R. A., 628; Gerber v. Ackley, 37 Wis., 43; McLendon v. State (Tenn.), 22 S. W. Rep., 209, 21 L. R. A., 739; Hawkins v. Thomas, 29 N. E., 158; Chandler v. Rutherford, 101 Fed. Rep., 774, s. c. 51 S. W. Rep., 981.

BROWN, ASSOCIATE JUSTICE.—Upon application of a number of the citizens of the community of Buffalo Springs, in Clay County, R. J. Brown, sheriff of that county, appointed W. E. Allen and Hugh Cozart his deputies, who qualified according to law and were instructed by the sheriff to suppress violations of the law and breaches of the peace in that community. On the night of the shooting there was a "box party" at Friendship Church in Buffalo Springs community, and, with a view to prevent disturbances, Allen and Cozart stationed themselves at a point near to the church. Will King was at the church, was drinking and boisterous, and he and other young men mounted their horses and started along the road near which Allen and Cozart had taken their stand. The deputy sheriffs could see the party riding along the road and saw flashes and heard the reports of guns which they took to be six shooters. There were a number of shots fired at the time. These shots were fired upon the public highway and near to public residences. The young men approached on horse back, King being in the rear of the others, and, for the purpose of searching them and taking the pistols if any were to be found upon their persons, Allen and Cozart called upon those who were in front to halt and dismount, which they did, and the deputies ordered them to "line up" for the purpose of being searched. King came by on his horse in a run and the deputies ordered him to halt, which he did not do, and after he had passed the deputy

sheriffs heard several shots in the direction he had gone. In order to stop King as he passed each of the deputies fired at the horse he was riding and one of the shots struck King by which he was wounded. It was not known which of them fired the shot that wounded King. King had no pistol that night.

King brought suit against R. J. Brown, W. E. Allen and Hugh Cozart for damages and recovered judgment in the sum of $2,000. Allen and Cozart did not appeal. The Court of Civil Appeals reversed the judgment as to Brown and rendered judgment in his favor.

Sheriff Brown is liable for the act of his deputies in shooting King if the arrest which they were seeking to make at the time the shooting was done was an "official act" within the meaning of the following article of the Revised Statutes:

"Article 4897. Sheriffs shall be responsible for the official acts of their deputies, and they shall have power to require from their deputies bond and security; and they shall have the same remedies against their deputies and sureties as any person can have against a sheriff and his sureties."

The authority of the deputies, Allen and Cozart, to make the arrest was derived from article 226 of the Code of Criminal Procedure which reads as follows: "A peace officer or any other person may without warrant arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'" The deputies, Allen and Cozart, were peace officers and the act of firing pistols on a public road near to private residences constituted an "offense classed as against the public peace." Article 334 of the Penal Code reads as follows: "If any person shall go into or near any public place, or into or near any private house, and shall use loud and vociferous or obscene, vulgar or indecent language, or swear or curse or yell or shriek or expose his person or rudely display any pistol or other deadly weapon, in a manner calculated to disturb the inhabitants of such public place or private house, he shall be fined in any sum not exceeding $100." A public place is defined by article 335 of the Penal Code as follows: "A public place, within the meaning of the two preceding articles, is any public road, street, or alley of a town or city, or any inn, tavern, store, grocery or workshop or place at which people are assembled or to which they commonly resort for the purpose of business, amusement, recreation or other lawful purpose." The undisputed evidence in this case shows that the pistols were fired on a public road near private residences. The wanton discharge of firearms in a public road was calculated to alarm the people in nearby residences. (People v. Bartz, 53 Mich., 495.)

At the time the pistols were fired the body of men in the public road where the flashes were seen and the reports heard by the officers were within two hundred or two hundred and fifty yards of the officers who saw the men at the time the shots were fired. The offense was committed in the presence of the two officers. (People v. Bartz, 53 Mich., 493.) In the case cited the court said: "Was the offense committed in the presence of the officer? If it was, he was authorized to make the arrest without a warrant. I think it was committed in his presence. The distance was the width of the avenue. He was in sight of

the person discharging the pistol, and did not lose sight of him while pursuing to make the arrest. Had the shooting occurred in the daytime, no such question would be raised. A person's presence does not depend upon whether he can be distinctly seen or discerned by another. An assemblage of persons in a room lighted with gas do not cease to be present when the gas is turned off and they are left in total darkness. The presence of the officer in this case was so apparent to respondent that he deemed it prudent to absent himself as soon as he discharged the revolver. The court instructed the jury, as matter of law, that when a pistol is fired off in the way the testimony tends to show this was, so the officer could see the flash of the pistol and hear the shot, and the person who fired the shot would have been in sight if it had been light so he could have seen him, it was sufficiently in his presence in the meaning of the law. I think the charge was correct."

The acts constituted an "offense against the public peace" and being committed in the presence of the two officers they were authorized by law to make the arrest if King had been guilty of committing that offense. Of this proposition there is no dispute by counsel for Brown as we understand their arguments and it is stated by the Court of Civil Appeals in their opinion as being a correct proposition of law. But it is contended that the attempt to arrest King was not official because he had no pistol and was not guilty of any offense. If to be official the act must be lawful the contention is sound.

It is not disputed that Allen and Cozart were regularly appointed deputies of the sheriff, nor can it be denied that under the statute and decisions we have cited the offense came within the authority given to arrest persons committing offenses "against the public peace" in the presence of the officer. Allen and Cozart purported to act as deputy sheriffs and not in their personal character, and, thus assuming to exercise their official authority, it devolved upon them to determine from the facts presented whether the offense of firing the pistols on the public highway near to a residence had been committed and also to decide whether King was guilty of the offense; in making this decision they acted in their official capacity and the attempt to arrest King was an official act for which their principal, R. J. Brown, is responsible. (Luck v. Zapp, 21 S. W. Rep., 418.) In the case just cited Judge Williams, speaking for the court, said: "The deputy was the general agent of the sheriff and it was his duty to determine, as a guide to conduct in the execution of the writ which he held, the scope of the authority which is conferred, and the nature of the action which it enjoined or authorized. His determination of those questions, and his acts done in pursuance of it, were the exercise of official authority conferred upon him by his principal, and the latter was responsible for them."

It is contended by counsel for the defendant in error, and the Court of Civil Appeals seems to have acted upon that view of the law, that because King was not guilty of firing a pistol or of carrying a pistol, the act of the deputy sheriffs was personal and not official, therefore, that Brown, their principal, was no responsible therefor. The character of the act, whether official or not, does not depend upon its lawfulness, but upon the fact that the person who performed it is in fact an officer and purports to act in his official capacity and does act by virtue of

authority conferred by law. (Hays v. Creary, 60 Texas, 445; Stephenson v. Sinclair, 14 Texas Civ. App., 133; Seitner v. Ransom, 82 Minn., 404; Clancy v. Kenworthy, 74 Iowa, 740; Hall v. Tierney, 89 Minn., 407; Turner v. Sisson, 137 Mass., 191; 1 Pickering, 270.)

If Allen and Cozart had been acting under a regular warrant authorizing them to arrest a man named Jones, charged with the commission of the same offense, it would have devolved upon them to determine whether or not King was the person named in the writ, and if they had made a mistake as they did in this case and, upon King fleeing, had shot him, as they did, the fact that the writ did not authorize them to arrest King would not change the character of the attempted arrest from official to nonofficial. As stated in a number of the cases cited above, such a doctrine would result in no responsibility, for if the act be lawful and lawfully performed there can be no responsibility whatever, because no damage could result from such act. We think it is apparent from the facts of this case and the law that the acts of Allen and Cozart were their official acts as deputies of R. J. Brown for which he must be held responsible.

In support of the judgment of the Court of Civil Appeals, the case of Maddox v. Hudgeons (72 S. W., 414), in which a writ of error was denied by this court, is much relied on by counsel for Brown. There is a marked distinction between that case and this in these particulars. The offense in that case was not committed in the presence of the deputy, Isbell, and no person had informed him that the offense had been committed by any particular party; nor had a warrant been issued for the arrest of any person charged with the offense, consequently Isbell was wholly without any lawful authority to arrest any person on that charge, while in this case all of the statutory requirements necessary to confer authority upon the officers here acting to make the arrest of the persons who had committed the offense which they had witnessed were present. Isbell had no authority to direct the constable, who had arrested a party in that case, to place him in jail. It is therefore apparent that in the case cited the act of Isbell was wholly personal, had none of the elements of an official act, and could not possibly have bound the sheriff of that county under whom he was deputized. We think that the contrast of the two cases emphasizes the error of the judgment in this case.

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*