## COUNTY OF MOWER v. AMERICAN BONDING COMPANY OF BALTIMORE.[1]

June 16, 1916.

Nos. 19,737—(138).

**Liability of surety on official bond.**

1. Sureties upon an official bond are liable for unfaithful or improper conduct of the officer in the performance of acts or duties which the law authorized or required him to perform.

[1]Reported in 158 N. W. 394.

Note.—For authorities passing on the question of suits on official bonds for trespass or unauthorized acts of officers done under color of office, see note in 21 L.R.A. 734: and for cases passing upon liability of surety in case of fraud of obligee, see note in 21 L.R.A. 413.

**Same.**

2. They are also liable for a trespass upon person or property committed by the officer while acting within the scope of his official authority and while purporting to act in his official capacity.

**Same.**

3. They are not liable for the acts of the officer committed wholly outside the scope of his official authority.

**Same — moneys received by county auditor.**

4. Receiving from villages ten per cent of the fees paid to them for liquor licenses, from auctioneers and peddlers the fees paid for their respective licenses, and the money paid for the use or sale of county property, was wholly outside the scope of the official authority of the county auditor, and his sureties are not liable for his misappropriation of such funds. The county treasurer was the only officer authorized to receive such payments.

Action in the district court for Mower county to recover $2,346.80 from defendant as surety upon the official bond of George Robertson, county auditor of that county during the years 1911 and 1912. The motion of defendant that plaintiff make its complaint more definite and certain in the particular specified in the motion papers was denied. From an order overruling its demurrer to the complaint, Kingsley, J., defendant appealed. Reversed.

*Catherwood & Nicholsen,* for appellant.

*Otto Baudler,* County Attorney, and *Sasse & French,* for respondent.

TAYLOR, C.

The several villages in the county of Mower, upon the demand of the county auditor, paid to him ten per cent of the fees received by such villages for the liquor licenses issued by them. Five auctioneers and one peddler also paid to him the fees for their respective licenses. One of the county commissioners also paid to him $56.80 collected by the commissioner for the sale of some old bridge timbers and the use of a concrete mixer belonging to the county. The county auditor paid none of the money so received by him into the county treasury; but converted it all to his own use, and subsequently died insolvent. The county brought this suit against defendant, the surety upon the official bond of the audi-

tor, to recover the money so converted by him. Defendant demurred to the complaint; the demurrer was overruled, and defendant appealed.

The question presented is whether defendant as surety upon the official bond of the county auditor is liable to the county for the funds so converted by him.

Chapter 450, p. 548, Laws of 1909, in force at the time of the payments here in question, required that ten per cent of all money paid into any village treasury for liquor licenses shall be paid "into the county treasury." Section 6083, G. S. 1913, authorizes the issuance of auctioneers' licenses and provides: "Before such license is issued the licensee shall pay into the county treasury a fee of ten dollars." Section 6090, G. S. 1913, authorizes the issuance of peddlers' licenses and provides that the applicant shall pay the fee therefor "to the treasurer of the county." The board of county commissioners have authority to dispose of county property, but there seems to be no specific statutory provision directing what they shall do with the proceeds. Such proceeds belong to the county, however, and must be paid into the county treasury.

The county treasurer was the only officer authorized to collect or receive the funds in controversy. The county auditor was nowhere given authority to collect or receive any of them. Those making the payments were required to make them to the treasurer, and had no more legal right to make them to the auditor than to the register of deeds, to the superintendent of schools or to some private individual. When the auditor received and accepted the money, he probably assumed the duty of acting as agent of the payer in transmitting it to the treasurer; but he was performing no official duty.

The statute provides that "each county auditor * * * shall give a bond to the state * * * conditioned for the faithful discharge of the duties of his office." G. S. 1913, § 812. The defaults of the auditor occurred during three successive terms; and three bonds, in each of which defendant was the sole surety, are involved in the present case. The bonds were sufficient to obligate the surety as required by the statute, and no question is raised as to the conditions contained therein.

The cases involving the liability of sureties for default of public officers are numerous and the decisions conflicting. The courts agree, however, in holding the sureties liable for unfaithful or improper con-

duct of the officer in the performance of acts or duties which the law authorized or required him to perform. This court, following the weight of authority, also holds the sureties liable for a trespass upon person or property committed by the officer while acting within the scope of his official authority, and while purporting to act in his official capacity. The courts also agree that sureties are not liable for the acts of the officer wholly outside his official duties as defined by law; but they do not agree as to what acts are within the line of such official duties and what acts are outside such duties. The majority of the cases fall readily into one or another of the three classes mentioned. Of the cases decided by this court, Board of Co. Commrs. of Ramsey County v. Sullivan, 89 Minn. 68, 93 N. W. 1056, is an example of the first class. Sullivan was county auditor. His deputy issued false orders upon the treasurer for redemption money. The auditor was required by law to issue orders for redemption money to those entitled thereto, and the misconduct of the deputy was held to be covered by the bond. Hursey v. Marty, 61 Minn. 430, 63 N. W. 1090; Seither v. Ransom, 82 Minn. 404, 85 N. W. 158; Hall v. Tierney, 89 Minn. 407, 95 N. W. 219, are examples of the second class. In each of these cases the officer was acting within the scope of his official authority and committed a trespass while purporting to act in his official capacity, and his sureties were held liable. Cressey v. Gierman, 7 Minn. 316 (398), and Megaarden v. County of Hennepin, 102 Minn. 134, 112 N. W. 899, are examples of the third class, in which the acts of the officers were outside their official duties as defined by law.

All the cases cited and relied upon by plaintiff, in which the liability of sureties was involved, are cases in which the officer was guilty of a trespass while acting within the scope of his official authority and while purporting to act in his official capacity. None of them hold the sureties liable where the officer was acting outside the scope of his official authority.

In the present case, if we concede that the auditor assumed to act in his official capacity, yet it is nevertheless true that receiving the funds in question was wholly outside the scope of his official authority. His office gave him no color of right to receive them. However divergent the decisions may be in other respects, they unite in holding that sureties are not liable for the misappropriation by an officer of funds received by him outside the scope of his official authority. Cressey v. Gierman, 7 Minn. 316

(398); Megaarden v. County of Hennepin, 102 Minn. 134, 112 N. W. 899; County of San Louis Obispo v. Farnum, 108 Cal. 562, 564, 41 Pac. 445; State v. Griffith, 74 Oh. St. 80, 77 N. E. 686, and cases cited in note appended to the report of that case in 6 Ann. Cas. 917; Feller v. Gates, 40 Ore. 543, 67 Pac. 416, 56 L.R.A. 630, and note appended to the report of that case found in 91 Am. St. 492.

Order reversed.