## S. O. WORKMAN v. HUGH FREEMAN

No. A-5394. Decided May 2, 1956.
(289 S.W. 2d Series 910)

*G. A. Paquin,* of Muleshoe, for petitioner.

The Court of Civil Appeals erred in holding that the acts of the said deputies complained of were not the official acts of the defendant, sheriff, within the purview of Article 6870 of the Texas Revived Statutes and were therefore not acts for which the sheriff could be held liable. De La Garza v. Ryals, Texas Civ. App., 239 S.W. 2d 854 error refused, n.r.e.; Bonatz v. State, 85 Texas Crim. Rep., 292, 212 S.W. 2d 494; Aetna Casualty & Surety Co. v. Clark, 136 Texas 238, 150 S.W. 2d 78.

*Joe Sharp,* of Plainview, for respondent.

Replying, cited Taylor v. Stanford, 229 S.W. 2d 427; Brown v. Wallis, 100 Texas 546, 101 S.W. 1068; Sheppard v. Gill, 126 Texas 603, 90 S.W. 2d 563.

MR. JUSTICE BREWSTER delivered the opinion of the Court.
Petitioner Workman sued Hugh Freeman, Sheriff of Bailey County, Texas, respondent, and two of his deputies, for damages alleged to have been suffered from Workman's arrest by the deputies, which arrest the deputies assert was lawful because done in their official capacity as deputies of respondent Hugh Freeman.

Numerous special exceptions were filed by Hugh Freeman to Workman's second amended original petition, all urging that his pleading did not allege facts showing that the acts of the deputies were official acts for which the sheriff was liable. The trial court sustained these exceptions and "plaintiff failing to show the court that he is able to amend in such manner as to assert a cause of action against said Hugh Freeman * * * this cause is dismissed as to said Hugh Freeman * * * ."

This was Workman's third effort to plead a cause of action.

On appeal the Court of Civil Appeals affirmed. 279 S.W. 2d 486.

The sole point of error urges that the Court of Civil Appeals "erred in holding that the acts of the deputies, complained of, were not official acts within the purview of Article 6870 of the Texas revised civil statutes and were therefore not acts for which the sheriff could be held liable."

Article 6870, R. S. 1925, declares that sheriffs shall be responsible for the official acts of their deputies.

To decide the question at bar we have to make a summary of all the material fact allegations of Workman's second amended original petition and take them as true; and it is wholly idle to speculate on what he might have proved, since it has nothing whatever to do with the sufficiency of his pleadings. He alleged that while he was driving his car in the city limits of Muleshoe about 9:30 or 10:00 o'clock at night, he was ordered by defendant MacWagon to stop, so that it might be determined whether Workman was under the influence of intoxicating liquor; that Workman immediately complied and stood on the ground at the side of the car; that MacWagon ordered him to stand on one foot, which Workman refused to do; whereupon MacWagon grabbed plaintiff's arm and pulled it with great force, tearing out the sleeve; that he threatened to shoot plaintiff with a gun; and that all these acts of MacWagon were done while he believed he was performing his lawful duty as a deputy of Sheriff Hugh Freeman.

The petition further charged that MacWagon then sent his wife to get help from other deputies; that she returned shortly wtih Garland Freeman and another deputy; that plaintiff was standing by his car talking to MacWagon, when without warning Garland Freeman struck him on the side of his head above the left ear with a blunt instrument, which caused severe pain and suffering; that he then struck plaintiff several more times with the blunt instrument, on his head, shoulders, abdomen and face; that later when plaintiff was standing with his arms at his side and begging Garland Freeman not to hit him any more, Freeman struck him twice more with the same instrument with great force; that these acts of Garland Freeman were done to assist MacWagon in performing what both thought was a lawful arrest of plaintiff.

It was further alleged that Workman was taken to the county jail which was under the care and control of Hugh Freeman; that Hugh Freeman was aware of the plaintiff's presence therein; that the plaintiff was bleeding, but was refused medical aid, and was further refused the use of a first-aid packet, though the plaintiff requested both; and that plaintiff was forced to remain in jail for the balance of the night without medical aid.

Without a single allegation that Workman was to any extent whatever under the influence of intoxicating liquor or that the deputies had any probable cause to believe that he was, deputy MacWagon *ordered* Workman to stop and to alight from

his car. According to Workman's pleading there was no resistance from him. On the contrary, he "obeyed" MacWagon and stopped the car; he "immediately" got out of the car when *ordered* by the deputy to do so, and stood on the ground beside his car. Then MacWagon *requested* him to stand on one foot. This, Workman alleges, was to determine whether he was under the influence of intoxicating liquor. That it was more than a *request* is shown by the allegation that when Workman declined, MacWagon grabbed his arm and "pulled with great force" and threatened to "shoot him with a gun."

Then when Garland Freeman and another deputy arrived shortly on summons from MacWagon's wife, and when Workman was still standing at the side of his car talking to MacWagon, and without any warning (or any request or direction from MacWagon), Garland Freeman struck Workman on the side of his head with a blunt instrument, causing severe pain and suffering; after which he struck Workman several more times with the same instrument on his head, shoulders, abdomen, and face; and thereafter and while Workman was standing with his arms at his side and begging Garland Freeman not to hit him any more, Freeman struck him twice more with the same instrument with great force.

Aside from stopping his car and alighting as MacWagon directed, the only other things Workman did was to refuse to stand on one foot, as part of the drunkenness test, and to beg Garland Freeman not to hit him any more. The only justification claimed in the petition is that everything was done in the deputies' capacity as deputies of Hugh Freeman, sheriff, but without any allegation that the sheriff directed their actions or ratified them after they were committed. (And it is significant that in his third effort to plead a case against Hugh Freeman, Workman makes no effort to plead that the deputies found Workman was in fact drunk or to any extent under the influence of intoxicating liquor.) In all these things, then, the acts of the deputies were unauthorized by law as required by King v. Brown, 100 Texas 109, 113, 94 S.W. 328, and not official, and the sheriff was not liable therefor. This is the holding in Maddox v. Hudgeons (Civ. App.), 72 S.W. 414, error denied, as well as in other cases cited by the Court of Civil Appeals. Other pertinent authorities are Taylor v. Stanford (Civ. App.), 229 S.W. 2d., 427, no writ history, and Sheppard v. Gill, 58 S.W. 2d 168, 90 S.W. 2d 563. See also, 38 Texas Jur., p. 452, § 19, and authorities there cited.

Reverting briefly to the pleadings, it was alleged that Workman was finally taken to the county jail, which was under the control of Hugh Freeman. According to the allegations, this was after the events attending Workman's arrest, which occurred sometime after 9:30 or 10:00 o'clock at night. Although it is alleged that Hugh Freeman "was aware of" Workman's presence in the county jail, there is no allegation that the sheriff knew anything about the circumstances of his arrest nor anything about any need for medical attention. Nor is there any allegation that the sheriff was guilty of any undue delay the next morning in finding out the facts about Workman's being in jail or in taking such appropriate action as the facts required. There is a fairly suggested inference of a negative answer to these points in Workman's allegation that he "was forced to remain in the aforesaid jail *for the balance of the night* * * * ." (Italics ours.) Under those allegations (or absence of allegations) no liability could arise under any inference that the sheriff ratified any of the unlawful acts of the deputies, as alleged by Workman.

It has been suggested that under the allegations of the second amended original petition Workman alleged a case of false imprisonment against the sheriff. There was no attempt to allege any such thing, as will appear from a reference to the allegations of the petition as outlined above. Moreover, by reference to his motion for rehearing in the Court of Civil Appeals Workman says: "We readily admit that this is a case which is not classed as an arrest and false imprisonment by a deputy who acted without a lawful warrant, but the facts clearly indicate that the deputies herein *were* acting with legal authority." If Workman wanted to pitch his case on the theory of legal arrest, he most celarly had the right to do so, and it is not the province of this court to deny him the right.

We affirm the judgment of the Court of Civil Appeals.

Opinion delivered May 2, 1956.

MR. JUSTICE SMITH, dissenting.

Can it be said that the acts of the deputies were private in nature, and without a trial can this Court hold, as a matter of law, that there was no misfeasance in the official conduct of the deputies and can it be said that the sheriff is not liable, independent of the actions of the deputies? I think not. It is possible that at the close of plaintiff's evidence, the respondent,

Hugh Freeman, would be entitled to an instructed verdict, but this does not mean that it was proper for the trial court to sustain special exceptions, which, when read, will be found to be rather vague and indefinite themselves. Article 6870, Vernon's Annotated Civil Statutes of Texas, provides that "sheriffs shall be responsible for the official acts of their deputies, and they shall have power to require their deputies bond and security; and they shall have the same remedies against their deputies and sureties as any person can have against a sheriff and his sureties." The pleaded facts in this case show that the deputies were acting in an official capacity when they stopped the plaintiff and requested him to stand on one foot in an effort to test whether or not the plaintiff was intoxicated or under the influence of intoxicating liquor to such degree as to have been driving his automobile in violation of the law in the presence of the officer. It was alleged that the deputies, while attempting to ascertain whether or not the petitioner was drunk or under the influence of intoxicating liquors, and, therefore, driving an automobile in violation of law in the presence of the officer, threatened the life of petitioner, and without warning struck and seriously injured the petitioner. It is my position that these were not such acts on the part of the deputies that can be said to be in law outside of the scope of employment and the sheriff cannot be held liable. The test is: Were the deputies performing an official duty in the first instance? If so, the sheriff is responsible in law for their acts. Article 6870, supra, was enacted by the Legislature for the purpose of protecting the public from the acts of officers such as we have here, wherein the pleadings show an abuse of the extraordinary official powers given an enforcement officer.

The case of Maddox v. Hudgeons, Teas Civ. App., 72 S.W. 414, relied on by respondent and the majority has no application. In that case the Court said in part, "* * * by Article 4897 sheriffs are made responsible for the 'official' acts of their deputies, * * *." In that case, Maddox, the sheriff, was informed of a burglary in a distant part of Jack County, and he immediately left Jacksboro for the place of the burglary. Soon after the sheriff's departure, one Walter Isbell, a deputy sheriff, notified Will McNeal, a constable, of the burglary, and told McNeal that the sheriff wanted him to assist in arresting the parties who had committed the burglary. Soon thereafter and without warrant or authority of law whatever, McNeal arrested two men, Hudgeons and Setser, in the town of Jacksboro on suspicion alone and took them to the sheriff's office. McNeal inquired of Isbell (the sheriff was not present) if he should

place the men in jail. Thereupon, McNeal, in the absence of the jailer, procured the keys from the jailer's wife and locked up the two men. The Court said: "* * * The deputy sheriff in question (Isbell) was in the performance of no duty imposed on him by law or by appellant (sheriff) in requesting McNeal's assistance. It is in case of resistance alone that authority is given to summon assistance, and no resistance or ground to so except is here shown. * * * Isbell, then, in summoning McNeal's assistance, was in no sense acting in the performance of an official act or duty. Appellee's illegal arrest was not even directed by Isbell, and it would hence seem clear that appellant is not liable therefore. *Nor was Isbell in the performance of official duty in directing McNeal to place appellee in jail. Isbell was without authority or color of authority to direct McNeal to imprison, and such direction was no justification to McNeal in doing so. * * *"* (Emphasis added.)

In the case of Aetna Casualty & Surety Co. v. Clark, 1941, 136 Texas 238, 150 S.W. 2d 78, this Court quoted with approval the following from the case of Gray v. DeBretton, 192 La. 628, 188 So. 722, 726:

"The purpose of an official bond is to provide indemnity against malfeasance, nonfeasance and misfeasance in public office * * * .

"* * * If the situation had been that the deputy was walking along the street with his prisoner in charge, and for some reason personal to the deputy, he had struck a bystander with his hand or pistol, it could not be said that such an unlawful act on his part was done in the discharge of an official act. But, on the contrary, had he struck the prisoner, when there was no need for it, obviously his conduct in so doing would have been the violation of an official duty. A misfeasance for which the sheriff and his surety would have been liable."

In the case of Maddox v. Hudgeons, supra, the deputy was without authority and was not performing an official duty in commanding Isbell, the constable, to place Hudgeons in jail; whereas, in our case, the deputy sheriff, Joe MacWagon was performing an authorized official act when he summoned to his aid another deputy sheriff, Garland Freeman, to aid and assist him at a time when the petitioner had resisted and refused to obey the official command of Deputy MacWagon, and it was while acting in response to the request to render aid in arresting the petitioner that the unlawful attack occurred. It can-

not be successfully argued that petitioner was not under arrest at all times, and was immediately carried to the jail. The petitioner alleged under paragraph six of his second amended original petition (no exception to this) that the jail was "under the *care and control of the (sheriff), Hugh Freeman, and Hugh Freeman was aware of the plaintiff's presence therein, and the plaintiff was bleeding but was refused medical aid* and was further refused the use of a first aid packet though the *plaintiff requested both of the foregoing and the plaintiff was forced to remain* in the aforesaid jail for the balance of the night without medical aid." (Emphasis added).

Thus it is seen that petitioner stated facts in his petition showing that the sheriff and the deputies were joint tort-feasors and equally responsible in damages. Article 6870, supra, was enacted by the Legislature to protect the public from such unwarranted acts of sheriffs and their deputies. The sheriff was aware of petitioner's presence in the jail, yet, he made no effort to ascertain why he was there. The pleadings certainly admit of a reasonable deduction that the sheriff made no effort to comply with the law which requires an officer to take his prisoner immediately before a magistrate that he might plead to the charge against him; neither was the sheriff concerned enough to secure medical aid for his prisoner. It is my contention that, regardless of the circumstances under which petitioner was arrested, when the sheriff became aware of the presence of petitioner in his jail, the sheriff, from that moment, was charged, as a matter of law, with responsibility for petitioner's imprisonment, and, if a wrong was being committed, that is to say, if petitioner was in jail without lawful authority, the sheriff became directly responsible in damages to petitioner. Petitioner prayed for damages in the sum of $16,930.00 against Garland Freeman and the sheriff jointly and severally. In the absence of special exception, the damages prayed for include all injuries sustained as a result of the negligent acts of the deputies as well as the negligent acts of the sheriff after he became aware of petitioner's presence in the jail. See McBeath v. Campbell, Tex. Com. App., 12 S.W. 2d 118.

Article 5115, Vernon's Annotated Civil Statutes of Texas, provides that "each sheriff is the keeper of the jail of his county. He shall safely keep therein all *prisoners committed thereto by lawful authority,* subject to the order of the proper court, and shall be responsible for the safe keeping of such prisoners. The sheriff may appoint a jailer to take charge of the jail, and supply the wants of those therein confined; but in all cases the

sheriff shall exercise a supervision and control over the jail."
See Bracken v. Cato, 5th Circuit, 54 F. 2d 457. Article 1169,
Vernon's Annotated Penal Code of Texas defines false imprison-
ment as "the wilful detention of another against his consent
and where it is not expressly authorized by law, whether such
detention be effected by an assault, by actual violence to the
person, by threats or by any other means which restrains the
party so detained from removing from one place to another as
he may see proper."

The majority opinion quotes from petitioner's motion for
rehearing in the Court of Civil Appeals. I do not agree with
the position of the majority that the quotation constitutes an
admission that the sheriff was not negligent in the performance
of his duties and was not guilty of acts, which, in law, amounted
to false imprisonment. A casual reading of the entire motion
for rehearing should convince this Court that the petitioner
was attempting to show that the Court of Civil Appeals was in
error in following the case of Taylor v. Stanford, Tex. Civ. App.,
229 S.W. 2d 427, no writ history. This case, in my opinion, has
no application to the facts of the case at bar. There the officers
entered a private home without a search warrant or other war-
rant of authority, and without permission of the owner of the
premises. The arrest was unlawful and the sheriff had no
knowledge of the unlawful arrest and subsequent false im-
prisonment. The Court in holding the sheriff not liable quoted
from the case of Graves v. Buzbee, Tex. Civ. App., 45 S.W. 2d
392, no writ history, as follows: "If Sheriff Lambert did not
know and participate in the unlawful arrest and false imprison-
ment of the plaintiff, there would be no liability on his part,
although his deputy Parks made the arrest without warrant or
other lawful authority. * * *" In our case we have facts show-
ing a deputy sheriff clothed with his badge of office, armed with
a pistol and with authority to make arrests on the streets of
Muleshoe without a warrant, actually arresting the petitioner,
and summoning aid when his prisoner refused to obey his or-
ders, and then subsequent assault and imprisonment. From all
the facts and circumstances, as plead by the petitioner, it is
conclusive, in my opinion, that the Deputy Joe MacWagon
was acting upon probable cause from his viewpoint. This does
not mean that the petitioner is required to plead that he was
drunk or under the influence of intoxicating liquor, or that he
was driving his car in a manner that would give the officer
probable cause to stop the petitioner. It is entirely possible that
petitioner had no way of knowing why the arresting officer
commanded him to stop and undergo the humiliation and treat-

ment that followed. For all I know, the deputy had been reliably informed that petitioner was either drunk or transporting intoxicating liquor. In that event, the deputy would have had sufficient probable cause to authorize him to apprehend and stop the petitioner when found driving a car upon the streets or highways, although the petitioner was driving in a perfectly normal manner. No such authority is given an officer to invade a man's home and search his premises. He must have a legal search warrant, or secure a waiver from the owner of the premises, otherwise all of his acts are unlawful.

The petitioner is entitled to present his cause of action against the sheriff as well as the deputies, and anything short of that would be depriving him of the rights given him under the Bill of Rights and the laws of this State to secure full redress for the wrongs committed by the sheriff as well as his deputies.

I would reverse the judgments of the trial court and the Court of Civil Appeals and remand this cause to the trial court for a trial on its merits.

Opinion delivered May 2, 1956.

MR. JUSTICE WILSON also dissented.