Harold R. RHODEN et al., Appellants,

v.

Mrs. Joseph L. BOOTH et al., Appellees.

No. 15759.

Court of Civil Appeals of Texas.

Dallas.

Feb. 17, 1961.

Rehearing Denied March 17, 1961.

Burt Barr and Stanley C. Hogg, Dallas, for appellants.

Storey, Armstrong & Steger and John K. DeLay, Jr., Dallas, for appellees.

DIXON, Chief Justice.

This is a wrongful death suit brought by Mrs. Joseph Laurence Booth, surviving widow of Joseph Laurence Booth, suing in her individual capacity, and also as next friend of Betty Jo Booth, Judith Elaine Booth, and Charlene Cupples, children of Joseph Laurence Booth. The last named plaintiff was joined pro forma by her husband R. E. Cupples.

There were originally eight defendants, but a take nothing judgment was entered in behalf of five defendants, who are not involved in this appeal. The other defendants, appellants herein, were T. A. Vines, Constable, Precinct No. 7, Dallas County, Texas, Harold R. Rhoden, Deputy Constable under Vines, and Aetna Casualty and Surety Company, surety in the amount of $1,000 on Vines' official good performance bond.

Appellees in their petition alleged that Deputy Constables Harold R. Rhoden and C. S. McKissick, (now deceased), while serving an instanter subpoena on Booth, wrongfully and maliciously shot and killed Booth.

The suit was tried to a jury which found that (1) Vines did not know of the alleged wrongful acts of his deputies, (2) did not authorize; and (3) did not ratify said acts; (4) Rhoden and McKissick, the deputy constables, were under bond; (5) Rhoden did not fire his pistol at Joseph Laurence Booth in defense of McKissick, as the term defense had been defined; and (6) the act of Rhoden and McKissick in shooting Booth was malicious and wilful. The jury found actual damages in excess of $15,000 and exemplary damages of $1,000.

Based on the jury verdict judgment was rendered in favor of Mrs. Joseph Laurence Booth against T. A. Vines and Harold R. Rhoden, jointly and severally, for $14,000; and against Vines, Rhoden and Aetna Casualty and Surety Company, jointly and severally, for $1,000. A judgment was also rendered in favor of Mrs. Joseph Laurence Booth individually and as next friend for the three children of the deceased against Rhoden and Aetna Casualty and Surety Company for $450. And finally judgment was rendered in favor of Mrs. Booth individually and as next friend of the three children against Rhoden alone for $1,000.

The judgments of $450 and $1,000 in favor of Mrs. Booth individually and as next friend of the three children do not state what portion of said awards should go to Mrs. Booth or what portion should go to each of the children.

### Rhoden's Appeal.

Appellant Rhoden's first point on appeal is that the trial court should not have charged the jury to the effect that Rhoden was limited to "reasonable" means to defend McKissick since Booth attacked Mc-

Kissick with a wrench about eighteen inches long. It is appellant's contention that under the law applicable he was entitled to use any means to protect McKissick from death or bodily injury.

Among the definitions and instructions given to the jury in the court's charge were the following:

"Upon the law of self defense you are instructed that when a person is attacked or threatened with an attack by another, and there is created in the mind of the person so attacked a reasonable expectation or fear of death or of serious bodily injury, then the law excuses or justifies such person so attacked in resorting to any *reasonable* means at his command to prevent his assailant from taking his life or inflicting upon him any serious bodily injury, and it is not necessary that there should be actual danger as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time; and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"You are further instructed as a part of the law in this case that a person is justified in acting in defense of another against unlawful violence against such person as it appears to him in the same manner and to the same extent as he would be acting in his own defense.

"You are further instructed that 'serious bodily injury' means such injury as gives rise to an apprehension of danger to life, health or limb." (Emphasis ours).

The above instruction was requested by appellant Rhoden except that the court, at

appellees' urging and over Rhoden's objection inserted the word "reasonable" between the words "any" and "means" in the phrase "resorting to any means at his command."

The jury during its deliberations sent a note to the judge asking for a definition of the word "reasonable". The judge answered that the word was used in its ordinary sense.

### Evidence in Rhoden's Appeal.

Rhoden in his own defense testified that he was given an instanter subpoena to be served on a person known as "Tennessee", whose real name was Joseph Laurence Booth. The subpoena did not come to Rhoden through Constable Vines' office, but was handed to him in the office of Justice of the Peace, W. C. Richburg, by the clerk of the justice court. Rhoden called by telephone from the clerk's office and informed Booth of the subpoena. Rhoden testified that Booth "told me that he was not coming to that court or any other 'son-of-a-bitching court' now or later. If I wanted him, if I came out there to bring $25 and twenty-five men". Rhoden and McKissick then left together to go to the place where Booth was working, their purpose being to serve the subpoena. The address given on the subpoena proved to be a service station and garage.

On arriving they found two men in the garage, one of them standing near an automobile on which the other man was working. Upon inquiry they were informed that "Tennessee" was the man working on the automobile. Rhoden did not know "Tennessee", or Booth, as we shall hereafter call him, and had never seen him before. Booth, who was in a stooping position at the time, straightened up with a speed wrench in his hand. According to Rhoden he then told Booth that he and McKissick worked out of the constable's office and that he was the officer that called him on the 'phone, that they had a subpoena for him out of Judge Richburg's court and the

Judge wanted him to come to his court immediately. Rhoden had the subpoena in his right hand. McKissick had his identification folder in his hand and also had his badge.

Booth, according to Rhoden, said that he was not going to the court now or later. McKissick then said "Man, you might as well go on over there. You eventually will have to go to see the judge." At that time Booth drew the wrench back over his head and hit straight at McKissick, who was standing in front of Booth. Booth would have hit McKissick if McKissick had not jumped back. McKissick then circled to Booth's left. Rhoden tried to hit Booth's hand with a night stick in order to knock the wrench out of his hand, but missed. He then asked Booth to lay the wrench down, but Booth did not do so. Instead he turned and tried to hit Rhoden with the wrench, but missed when Rhoden jumped back. Then Booth turned toward McKissick again, bringing the wrench up and down over McKissick's head. It was at this juncture that Rhoden fired his pistol at Booth. Rhoden said he did not have time to take aim, so fired quickly in Booth's direction. McKissick fired at the same time. Booth was hit. In due time an ambulance arrived at the scene. Within about an hour Booth was dead.

Rhoden testified that in attempting to serve the subpoena he did not arrest or attempt to arrest Booth. He had the subpoena in his hand because it was customary to read criminal subpoenas to persons summoned. His instructions were that if a person summoned refused to obey an instanter subpoena, the officer would then report back to the court, and upon affidavit, the court would issue an attachment. But until the attachment was issued he never attempted to arrest a person for denying the subpoena, or try to force him to obey it. In this case, according to Rhoden, he never got around to reading the subpoena because he did not have time to do so before Booth launched his attack.

The testimony of D. O. Milburn is in sharp conflict with that of Rhoden. Milburn was the man standing near the automobile on which Booth was working. He was the owner of the service station and garage. He had an arrangement with Booth whereby Booth used the garage shop and paid Milburn a percent of the revenue as rent on the garage.

According to Milburn one of the officers inquired for "Tennessee". When Booth was pointed out to them he stepped down from the fender on which he was sitting and said "Yes, I am Tennessee". Rhoden spoke next and said "Come on, we are taking you in", which statement was repeated two or three times. Each time Booth asked why they were taking him in. At the time Booth had a three-eighths speed wrench in his hand. McKissick had a black jack in his hand. Rhoden had a wooden "billy" or club. Rhoden then pulled a piece of paper out of his inside coat pocket and said, "That is the reason why". After the officers had told Booth several times to come on, Rhoden made a lunge at Booth and hit him on the head and shoulder with the "billy" club, knocking Booth to his knees. Booth quickly arose. The officers again told him several times to come on. The officers then drew their guns, and after a lapse of five or six seconds, both of them fired their pistols. Only the two shots were fired. Booth again fell to his knees. Some time later he was placed in the ambulance and taken to the hospital.

The testimony is undisputed that the wrench Booth had in his hand was about eighteen inches long, made of solid steel, with a universal socket on the end. It weighed about a pound and a half. Booth was about six feet tall. Milburn said he weighed about 165 pounds, but the autopsy report gave his weight as 190 pounds.

### Opinion in Rhoden's Appeal.

It is plain from Rhoden's pleadings and testimony that he relied on the defense of justifiable homicide to prevent an attack by Booth upon the person of McKissick with a weapon or means calculated to murder, maim or disfigure McKissick, the attack being such as to produce a reasonable expectation or fear on the part of Rhoden of death or some serious bodily injury to McKissick. Arts. 1222, 1224 and 1226, Penal Code.

██ With the exception of the rule of evidence which gives to a person accused of crime the benefit of a reasonable doubt, the law of self defense is the same in both civil and criminal cases. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; 33 Tex.Jur. 76–77. And the rule is the same whether one is defending himself or another person. Witty v. State, 150 Tex.Cr.R. 555, 203 S.W. 2d 212; 33 Tex.Jur. 76.

██ A speed wrench such as that which Rhoden says Booth was wielding is not a deadly weapon per se, but whether it became a deadly weapon from the manner of its use was a fact question in this case which Rhoden was entitled to have the jury determine. Ray v. State, 160 Tex.Cr.R. 12, 266 S.W.2d 124; Parkman v. State, 149 Tex.Cr.R. 101, 191 S.W.2d 743; 22 Tex.Jur. 480. Rhoden testified that he feared McKissick was going to be killed with the wrench. D. O. Milburn, Booth's business associate and appellees' principal witness, testified that if a person used the wrench to hit a man over the head it could do serious damage.

██ In case of an attack with an instrument which becomes a deadly weapon from the manner of its use, a defender of himself or of another person is entitled to use force without limitation to protect himself or the other person from death or bodily injury. He may use any means in his power to protect himself or the other person. And a charge which limits him to the use of reasonable means is erroneous. Perez v. State, 163 Tex.Cr.R. 255, 290 S.W. 2d 514–516; McMurrey Corp. v. Yawn,

Tex.Civ.App., 143 S.W.2d 664; March v. Walker, 48 Tex. 372; Erisman, "Manual of Reversible Errors in Texas Criminal Cases", § 730, p. 906.

In reply to appellant's first point appellees say that the evidence does not raise the issue of an attack threatening death or serious bodily injury, but raises only the issue of a milder attack not involving fear of death or serious bodily injury to McKissick. Appellees rely on the rule that one does not have the right to kill to defend from the milder attack until he has resorted to all other reasonable means of defense.

Appellees also contend that if Rhoden's theory of the law of self defense is correct it was necessary for the jury to find that (1) McKissick was the subject of attack at the time the shooting took place, and (2) at that time it reasonably appeared to Rhoden that McKissick was placed in reasonable fear of death or serious bodily injury. No such special issues were submitted. Rhoden did not request their submission or object to their omission. Therefore, according to appellees, the error, if any, in the instruction to which appellant objects must be considered harmless.

■ We agree with appellant Rhoden. The testimony of Rhoden plainly raised the issue of an attack by Booth threatening death or bodily injury to McKissick. Though Rhoden did not request the special issues referred to by appellees, he did request instructions which correctly stated the law with reference to one's right to protect another from an attack of such a nature as to raise a reasonable expectation or fear of death or serious bodily injury. The instruction as requested included all the elements necessary to a favorable verdict if the jury found the facts to be as testified to by Rhoden. No one objected to the charge on ground that it was a general charge. The insertion over Rhoden's objection of the word "reasonable" between the word "any" and the word "means" in

Rhoden's requested instruction denied him a proper submission to the jury of his full legal defense as raised by his evidence. We sustain Rhoden's first point.

Rhoden's second point is that the verdict and the judgment are excessive because the surviving wife's age is not shown and there is not any competent evidence to support a finding as to the amount of money that Booth in reasonable probability would have contributed to his wife in the future.

■ We agree. The rule is that while mortuary tables or express evidence of life expectancy may be introduced in personal injury or death cases, such evidence is not necessary if other facts are introduced in evidence from which facts the jury may estimate the life expectancy. In death cases the evidence is sufficient if it gives the age of both the deceased and the beneficiaries, the condition of their health, their habits, etc. The amount of the recovery must be based on the shorter expectancy as between the deceased and the beneficiary or beneficiaries. Gulf States Utilities Co. v. Moore, Tex.Civ.App., 47 S.W.2d 488. See also 33 Tex.Jur. 195–196, and cases there cited. In this case there is no evidence of the wife's age, habits, health, or life expectancy. Appellant Rhoden's second point is sustained.

Appellant Rhoden's third point is that the court should have granted a new trial because of appellees' questions and Vines' answers with reference to whether Rhoden was covered by a bond, which questions and answers were calculated to lead the jury to believe that any judgment against Rhoden would be paid by some insurance company.

We quote from the record:

"Q. I will ask you, Mr. Vines, if Mr. Rhoden and Mr. McKissick were under any sort of bond, such as your bond with the Aetna Casualty? A. Mr. McKissick and Mr. Rhoden was under a blanket bond that all law en-

forcement—I don't know whether all County Employees are or not, but I know that law enforcement employees are under a $10,000 blanket bond with some company that is carried with the County of Dallas. I don't know the name of the company. Q. Was that in effect on January, 1957? A. It was $10,000 at that time. To-day it has been raised twenty-five thousand."

◼ We must sustain appellant Rhoden's third point. Art. 6879b provides that constables shall have power to require bond and security from their deputies, but the provision is not mandatory. There is no evidence that Constable Vines had required any bond of appellant Rhoden. The testimony was certainly calculated to give the jury the idea that Rhoden was covered by a bond of some kind, though Vines did not name the insurance or bonding company, nor the condition of the bond. The introduction of the testimony was incurable error. It was permissible for appellant to object to this type of error for the first time on motion for new trial. He did so. Griffith v. Casteel, Tex.Civ.App., 313 S.W. 2d 149, 155–158; Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962; Beazley v. Mc-Ever, Tex.Civ.App., 238 S.W. 949. Appellant's third point is sustained.

### Appeal of Vines and Aetna Casualty and Surety Company

Constable T. A. Vines and the surety on his official bond have briefed nine points on appeal. The first, second, third, fourth and sixth points are (1) the undisputed evidence shows that Vines had a bond on his deputies Rhoden and McKissick; (2) the judgment is contrary to the pleadings and evidence; (3) the undisputed evidence shows that the bond of appellant Vines was a faithful performance bond and there is no showing in the records of any unfaithfulness on the part of Vines, but the evidence was to the contrary; (4) the undisputed evidence and findings of the jury were that Vines did not know of the acts of Rhoden, and did not authorize or ratify them; and (6) the verdict is contrary to the pleadings, evidence and law pertaining thereto.

◼ The second and sixth points are too general to require our consideration. Alston v. Rhoades, Tex.Civ.App., 316 S.W. 2d 182; McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643; Novita Oil Co. v. Smith, Tex.Civ.App., 247 S.W.2d 151.

◼ As to appellants' first point, the undisputed evidence does not show that Vines had a bond on Rhoden. On the contrary there is no evidence that Vines did have a bond on Rhoden.

In a request for admissions addressed to Rhoden appellees asked whether there was in effect some form of a bond, guaranty, surety or indemnity agreement which may possibly have covered the activities of Rhoden and McKissick. Rhoden answered that he did not have sufficient information to admit or deny that there was such a bond, but he unqualifiedly denied that he was principal on any such bond or instrument.

In our discussion of Rhoden's third point on appeal we quoted Vines' testimony pertaining to bonds on McKissick and Rhoden. For present purposes, the important feature of Vines' testimony is that he did not claim that he, Vines, had taken out a bond on Rhoden pursuant to Art. 6879b, Vernon's Ann.Civ.St. or otherwise. Appellants' first point is overruled.

◼ We believe that appellants' third and fourth points should be sustained. The jury found that appellant T. A. Vines did not know of the acts of Rhoden and McKissick, and did not authorize or ratify said acts. There is ample evidence to sustain the jury's findings. In fact we find no evidence to the contrary. There is no evidence that Vines was negligent in employing Rhoden or McKissick, or that he

failed to instruct them properly as to their duties as deputy constables.

The general rule is that a sheriff or constable is not liable for the unauthorized acts of his deputies where the liability arises in tort unless the sheriff or constable authorizes, participates in, or ratifies the individual tortious acts of his deputies. Workman v. Freeman, Tex.Civ.App., 279 S.W. 2d 486, affirmed 155 Tex. 474, 289 S.W.2d 910. Appellants' third and fourth points are sustained.

The fifth point of appellant Vines is substantially the same as appellant Rhoden's second point, which we sustained. We also sustain appellant Vines' fifth point.

We agree with appellants that there was no evidence as to what sum of money would reasonably compensate Mrs. Booth for burial expenses of her husband. John L. King, Jr., funeral director and embalmer, testified that Booth's body was shipped to Tennessee. He did not know the cost of his services, nor could he testify as to the reasonable worth of his services in the City of Dallas without data as to the type of casket used, etc. The records were at his office but he had not looked them up, nor brought them to court. He had no independent recollection about the matter, and could not make an estimate as to costs without the necessary data. If the lowest priced casket was used the costs would run from three hundred fifty to four hundred dollars. He did not know the cost in Booth's case, nor did he know who paid the bill. Appellants' seventh point is sustained.

In their eight and ninth points appellants complain because (8) the court refused to permit counsel in his argument to the jury to discuss that the court had instructed a verdict in favor of the defendants Mrs. McKissick and the McKissick children; and (9) the court refused to permit counsel in his argument to show the variance between plaintiffs' original petition and their amended petition.

The question of the directed verdict in favor of the McKissicks was a question of law solely for the court, and was not a matter for the jury to consider in weighing the facts as to Rhoden. The original petition was not evidence, nor was it any longer a pleading, having been superseded by the amended petition. Points eight and nine are overruled.

As to appellant Rhoden the judgment of the trial court is reversed and the cause remanded for another trial.

The facts as to appellants Vines and Aetna Casualty and Surety Company are fully developed. Appellees have failed to make out a case against Vines and his surety. Therefore, the judgment as to them will be reversed and judgment here rendered in favor of appellants T. A. Vines and Aetna Casualty and Surety Company.

Reversed and remanded in part, and reversed and rendered in part.