Donald WILLIAMS, Plaintiff,

v.

Sheriff Carl THOMAS et al, Defendants.

Civ. A. No. CA–3–79–0385–D.

United States District Court,
N. D. Texas,
Dallas Division.

April 3, 1981.

---

Robert T. Mowrey, Dallas, Tex., for plaintiff.

Sue Legard, Asst. Dist. Atty., Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

This action was brought pursuant to 42 U.S.C. § 1983. It arises out of events occur-

ring while Donald Williams (Williams), plaintiff, was an inmate at the Dallas County, Texas, jail. The complaint charged that on the morning of February 21, 1979, Williams was assaulted by Joseph E. Bolt (Bolt), defendant, a Dallas County sheriff's deputy, without reason or justification, and that the injuries inflicted were so severe that Williams required hospital treatment. The complaint additionally charged that a second sheriff's deputy, Larry Smith (Smith), defendant, participated in the assault, and Carl Thomas (Thomas), the sheriff of Dallas County, was also named as a defendant. Williams alleged the action of these parties transgressed upon rights guaranteed him under the Eighth and Fourteenth Amendments to the United States Constitution to be free of cruel and unusual punishment and not to be deprived of liberty without due process of law. He also asserted a state assault and battery claim under pendent jurisdiction. In addition, Williams sought attorneys fees pursuant to 42 U.S.C. § 1988.

This action was tried before a jury, and after the court dismissed the action as to defendant Thomas, the jury returned a verdict in the form of special interrogatories pursuant to Rule 49(a), Fed.R.Civ.P. The jury found as follows:

### Section 1983 Claim

1. (a) Bolt used excessive force against Williams.

   (b) Smith did not use excessive force against Williams.

2. Bolt acted in reasonable good faith.

3. Bolt's use of unreasonable force was a proximate cause of Williams' injuries.

4. Williams was entitled to no monetary compensation for Bolt's use of unreasonable force against him.

5. In using unreasonable force Bolt acted without malice.

6. Based on its finding that Bolt acted without malice, the jury was not required to make a finding as to punitive damages.

### Assault and Battery Claim

7. (a) Bolt committed an assault and battery against Williams, and such assault and battery was a proximate cause of Williams' injuries, though inflicted without malice.

   (b) Smith did not commit assault and battery against Williams.

8. In committing an assault and battery against Williams, Bolt was not acting in self-defense.

9. Williams was entitled to Five Hundred Dollars ($500) as compensation for Bolt's assault and battery against him.

10. Based on its finding that Bolt acted without malice, the jury was not required to make a finding as to punitive damages.

Thereafter Williams filed a motion for judgment. The Court has considered the motion, the briefs of the parties and has heard oral argument and has taken evidence on the issue of attorney's fees. The Court is of the opinion that judgment should be entered in favor of Williams against Bolt in the amount of Five Hundred Dollars ($500), for attorney's fees in the amount of Two Thousand Five Hundred Dollars ($2500) and for costs of action.

### Liability of Sheriff Carl Thomas

Counsel for Williams, in a letter dated February 13, 1981, has suggested that certain Texas statutory provisions make Thomas absolutely accountable for the acts of his deputies, and that the Court erred in peremptorily rendering judgment in favor of Thomas. Consequently, the Court feels it is proper to briefly address this contention.

Texas laws provides:

(a) Each sheriff is the keeper of the jail of his county. He shall safely keep therein all prisoners committed thereto by lawful authority, subject to the order of the proper court, and shall be responsible for the safe keeping of such prisoners.

(b) The sheriff may appoint a jailer to take charge of the jail, and supply the wants of those therein confined; but in

all cases the sheriff shall exercise supervision and control over the jail.

Tex.Rev.Civ.Stat.Ann. art. 5116.

> Sheriffs shall be responsible for the official acts of their deputies, and they shall have power to acquire from their deputies bond and security; and they shall have the same remedies against their deputies and sureties as any person can have against a sheriff and his sureties.

Tex.Rev.Civ.Stat.Ann. art. 6870. Despite the language of absolute liability present in these statutes, Texas courts, at least during the last forty years, have tended to apply a negligence or personal participation standard to sheriffs for injury to prisoners in their custody. An early example is *Browning v. Graves*, 152 S.W.2d 515 (Tex.Civ.App. —Ft. Worth 1941, writ ref'd), a case involving the beating death of a prisoner arrested for public drunkenness who had been locked up with a group of considerably more vicious prisoners. The court in *Browning* approved the imposition of liability on the sheriff (who was not the jailkeeper) on the basis of the sheriff's negligence in failing to discover and remove the blackjacks used by the prisoners to commit the murder. The case is less concerned with expounding general principles than passing on the specific issues presented to the jury, but implicit within the approval of the negligence issues therein given is a rejection of absolute liability, at least in the context of this kind of harm.

In *Workman v. Freeman*, 155 Tex. 474, 289 S.W.2d 910 (1956), the Texas Supreme Court held that a defendant-sheriff was not liable for the wrongful arrest, mistreatment, and false imprisonment of the plaintiff by the sheriff's deputy so long as the sheriff neither directed nor ratified the wrongful acts of his deputy. The majority opinion in *Workman* relied heavily on the notion that the wrongful acts of the deputies were not "official" acts as specified by the sheriff's liability statute, citing *Maddox v. Hudgeons*, 31 Tex.Civ.App. 291, 72 S.W. 414 (1903, writ ref'd), which contained the following discussion:

> [S]heriffs are made responsible [by statute] for the "official" acts of their deputies, and are given the same remedies against such deputies and their sureties as any person can have against the sheriff and his sureties. In the use of the term "official" in this statute, when construed with its connected clause, the Legislature must be presumed to have had knowledge of the well-defined distinction between official acts and acts done colore officii—a distinction upon which many of the apparently conflicting cases may perhaps be reconciled—and to have therefore intended to exclude responsibility for mere usurpation of authority on the part of their deputies.

72 S.W. at 415. The dissent in *Workman* accepted the notion that the sheriff's liability is determined by whether the acts of the deputies are in the course of official duty, but argued that the acts of the deputies, though unlawful, were undertaken within the scope of their official capacity as deputies and should therefore be imputed to the sheriff. Though the dissent did not cite the case, its opinion follows a line of cases back to *King v. Brown*, 100 Tex. 109, 94 S.W. 328 (1906), which held:

> The character of the act, whether official or not, does not depend upon its lawfulness, but upon the fact that the person who performs it is in fact an officer and purports to act in his official capacity and does act by virtue of authority conferred by law.

94 S.W. at 330. *King* recognizes that to equate "unlawful" with "unofficial" is to effectively negate the sheriff's responsibility, since "if the act be lawful and lawfully performed . . . no damage could result from such an act." *Id.* Nevertheless, the majority in *Workman*, with a cursory nod toward *King*, rejected the imposition of liability absent some direction or ratification by the sheriff, so that absolute liability for official acts shades into a sort of administrative or participatory negligence test.

That this is so is affirmed by *Rhoden v. Booth*, 344 S.W.2d 481 (Tex.Civ.App.— Dallas 1961, writ ref'd n. r. e.), which, in

purportedly following *Workman*, ceases struggling with the distinction between official and unofficial acts, holding instead:

> The general rule is that a sheriff or constable is not liable for the unauthorized acts of his deputies where the liability arises in tort unless the sheriff or constable authorizes, participates in, or ratifies the individual tortious acts of his deputies.

344 S.W.2d at 488. Given a deputy performing an unlawful act, the focus thus shifts from the capacity in which the deputy acted to the culpability of the sheriff in authorizing, participating, or ratifying the unlawful acts of the deputy. This shift in emphasis appears to have resulted from the inability of courts to define "official acts" so as to meaningfully identify those cases in which fairness required an easing of the absolute liability seemingly demanded by the relevant statutes. Though "authorization," "participation" and "ratification" are fairly elastic terms, they focus in on a relevant issue, that is, the behavior of the sheriff himself, without precluding assessing liability against the sheriff for what, by not investigating, he may have ratified. Thus, the line drawn is more precisely discerned, though perhaps less in step with the letter of the statute.

In evaluating Texas tort claims the federal courts have followed the Texas courts in focusing on the behavior of the sheriff rather than the official capacity of the deputy in those cases involving the liability of a sheriff for the acts of a deputy. In *Miller v. Jones*, 534 F.2d 1178 (5th Cir. 1978), the Court held:

> In order for the Sheriff to be liable under Texas law, he must know or have reason to believe that injury will likely be inflicted or he must have reason to anticipate the danger thereof and thereafter be negligent in failing to take steps to prevent the injury.

534 F.2d at 1180. Even in false imprisonment cases, in which for all practical pur-

poses the sheriff's liability is strict, the touchstone of the sheriff's liability is his diligence in performing his duties. The following discussion is found in *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1969):[1]

> In an opinion approved by the Texas Supreme Court, the Commission of Appeals ruled [in *McBeath v. Campbell*, 12 S.W.2d 118 (Tex.Com.App.1929)] that while the sheriff was not liable for the false arrest initiated by his deputy, he was liable in false imprisonment for failing to know the authority upon which his prisoner was held in the county jail:
>
> > "Certainly when the sheriff finds out that a prisoner is confined to his jail, which the law makes him the keeper of, and holds him responsible for, it is his duty to know by what authority he is confined therein, and he cannot close his eyes and fail to make an investigation and excuse himself on the ground of lack of knowledge . . ." [cite omitted].

407 F.2d at 794. Though the effect of the rule is to hold the sheriff strictly liable in Texas false imprisonment cases, the rationale for the rule rests on a sort of *per se* rule that the presence of one falsely imprisoned is so manifest and incapable of being overlooked that no sheriff could be unaware of such unlawful imprisonment in the absence of some considerable carelessness or other lack of diligence.

It should not go unnoticed that the general rule enunciated in *Rhoden* and *Miller* is limited to the sheriff's liability for *torts* committed by his deputies. Counsel for Williams has directed the Court's attention to *Rich v. Graybar Electric Co.*, 125 Tex. 470, 84 S.W.2d 708 (1935, opinion adopted), in which a constable's sureties were held strictly liable for an act of a deputy constable without any consideration of the constable's own diligence, participation, or ratification of the wrongful acts. In *Rich*, however, the deputy's wrongful act consisted not of a tort, but in failing to carry out

---

1. Though overruled in *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), vis a vis § 1983 claims for wrongful detention, the observations in *Whirl* concerning the law of Texas remain valid.

an affirmative duty to levy execution. In such cases the liability of a sheriff or constable appears to be strict, and care needs to be taken to distinguish these cases from those involving common law torts.

█ In the instant case the jury found that deputy Bolt committed an assault and battery against Williams. Because Williams presented no evidence at trial that Sheriff Thomas participated, authorized, or ratified the assault and battery, or that he was negligent in his administration of the County Jail or in his hiring or supervision of deputies, the Court dismissed all claims against Thomas. For the reasons stated above, the Court remains convinced that its action was the appropriate one and that Thomas cannot be held liable on a theory that a sheriff is absolutely responsible for all acts of his deputies as urged by Williams.

### Good Faith, vis a vis, The Civil Rights Act and Assault and Battery

Bolt asserted as an affirmative defense that he acted in good faith on the occasion giving rise to Williams' claim, and that he was thus immune from liability to Williams. The qualified immunity standard for public officials upon which Bolt relies was enunciated by the Supreme Court in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). A dual test calling for an objective and a subjective evaluation of the official conduct in question was established. *See Bryan v. Jones*, 530 F.2d 1210, 1214 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 1714, 50 L.Ed.2d 145 (1976).

Bolt, in his brief opposing Williams' motion for judgment, argues that the jury's finding that he acted in good faith in connection with Williams' § 1983 claim should relieve him of liability for assault and battery. On this contention, the Court is of the opinion (1) that such finding fails to provide a defense to the Texas tort of assault and battery, and (2) that the Court's charge to the jury in regard to the good faith defense under § 1983 was in error, and that as a matter of law Bolt could not have acted in good faith as that term is understood under the objective prong of the relevant test for immunity.

█ Looking first to the law of assault and battery, the Court is unable to find any authority for the proposition that good faith operates as a defense to assault and battery when such tort is committed by a peace officer. There does exist a doctrine of official immunity which privileges duly authorized peace officers to use force in the course of their duties. As formulated by the American Law Institute:

A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

(a) he is immune because engaged in the exercise of a discretionary function,

(b) he is privileged and does not exceed or abuse the privilege, or

(c) his conduct was not tortious because he was not negligent ·in the performance of his responsibility.

Restatement of Torts, Second, § 895D(3). The following comments are then made regarding the scope of official authority:

An immunity protects an officer only to the extent that he is acting in the general scope of his official authority. When he goes entirely beyond it and does an act that is not permitted at all by that duty, he is not acting in his capacity as a public officer or employee and he has no more immunity than a private citizen.

\* \* \* \* \* \*

In many cases an officer is under a duty to make a preliminary determination of whether he has the authority or jurisdiction. When he exercises discretion in making that decision and takes action pursuant to it, he is performing his official duty and will still be protected by the immunity for discretionary conduct, even though his decision is erroneous.

\* \* \* \* \* \*

If the officer's authority is limited to the exercise of a discretionary judgment in good faith, he must act in good faith but

his judgment is not otherwise subject to question.

Restatement of Torts, Second, § 895E, Comment (g). Good faith is not wholly irrelevant to official immunity, but it only comes into play when a public officer has made an erroneous decision as to the scope of his authority; it is a defense to a claim for damages arising out of an excusable cognitive jurisdictional mistake.

In the instant case Bolt made no conscious preliminary determination as to jurisdiction or authority. The jury found on the § 1983 claim that he used excessive force against Williams; that is, that he used force greater than was reasonably necessary to prevent injury or maintain discipline, and that the force used was greater than that which a detention officer of ordinary prudence would have used. Such a finding in these circumstances negates any possibility of a preliminary inquiry into authority or jurisdiction on the part of Bolt. He made no cognitive, discretionary error as to scope of his authority. Though Bolt's use of excessive force obviously involved some type of nonautomatic decision-making, it was not the type of mistaken decision which the official immunity doctrine shields. Though the boundary line between excessive and non-excessive force may be indistinct, there can be no question that excessive force is never authorized and that its utilization results from factors other than cognitive error as to jurisdiction.

■■■ The Texas Penal Code sets out the following standards justifying activity which might otherwise be criminally culpable:

[A] guard employed by a penal institution is justified in using any force, including deadly force, that he believes. to be immediately necessary to prevent the escape of a person from a jail . . . .

V.T.C.A., Penal Code § 9.52.[2] Williams was not, of course, at any time attempting to escape. The above statute does, however, endorse the general notion of official immunity as an incident of official authority, and

it cannot be doubted that the privilege to prevent escape implies the privilege to maintain discipline among inmates in custody. But, the bounds of that privilege are two-fold: the actor must be (1) a guard at a penal institution acting with a view to prevent an escape and (2) he must believe his use of force to be immediately necessary. In more general terms (1) he must be acting pursuant to lawful authority and (2) his use of force cannot be justified unless he believes and circumstances are such to warrant a reasonable belief that force is necessary. Good faith is relevant in a negative sense only—a guard's lack of belief in the necessity of the immediate use of force would nullify his justification despite the official character of his acts. Similarly, a guard's commission of acts unquestionably beyond the scope of his official duty—as, for instance, the use of excessive force— would nullify his justification despite his belief in their immediate necessity. Both elements must be present for a public official to prevail on a defense of justification.

Given a finding of excessive force in this case, a further finding of good faith cannot alone provide a defense. It is simply impossible at law to use excessive force in the course of official duty. The Court recognizes that the case law in this area is rather sparse, and, though it appreciates the necessity of allowing prison authorities wide discretion in disciplining prisoners, it cannot acquiesce in the proposition that excessive force can be immunized from liability merely by a detention officer's sincere conviction that such excessive force represents the best response to a perceived problem of prison discipline.

■■■ Looking then to the good faith defense as it applies to the Civil Rights Act of 1870, 42 U.S.C. § 1983, the Court charged the jury:

Even though it may be determined that a detention officer in the course of his duties did use excessive force against a prisoner, he will nevertheless have a com-

**2.** Though the above statute addresses only criminal liability, its standards also govern civil liability. See 6 Tex.Jur.2d Assault and Battery § 135.

plete defense to his actions in a civil suit such as this one if he can show that under the circumstances and acting as an ordinary and prudent detention officer he entertained a good faith belief that his actions were lawful and it was reasonable, under the circumstances surrounding his actions, to believe that those actions were lawful. "Reasonable good faith" is a two-pronged inquiry. There must be both a subjective good faith belief that the acts taken were legal, and the existence of reasonable grounds for that belief. There must be more than a mere showing of good intentions. "Reasonable good faith" means here an objective basis for the belief that the use of force was lawful.

Upon reconsideration, and especially in light of the recent decision of *Dilmore v. Stubbs*, 636 F.2d 966 (5th Cir. 1981), the Court is of the opinion that the objective prong of the good faith defense should be essentially a legal determination based not on the existence of *any* objective basis for a given belief in the lawfulness of a course of conduct, but rather based upon the reasonableness of an act given the state of the law as it existed at that time. As expounded by *Dilmore*:

> Under the objective standard, even an official who acts in the sincere subjective belief that his actions are proper will lose his qualified immunity if those actions contravene "settled, indisputable law." [citations omitted] An official is thus liable under § 1983 "if he knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights" of the person affected. [citations omitted]. But "[t]he fulcrum for the objective first half of [*Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)] is the existence, at the time of the official's action, of clearly established judicial decisions that make his action unconstitutional." [citations omitted]. We do not expect an official to predict the future course of constitutional law [citations omitted], but "he will not

be shielded from liability if he acts with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." [citations omitted].

636 F.2d at 968–969.

■ Consequently, the Court concludes that the use of excessive force against prisoners necessarily involves the violation of well-established constitutional norms regarding the treatment of prisoners. There are no subtle or shifting constitutional nuances at issue here. Williams alleged, and the jury apparently found, that Bolt grabbed Williams, slammed him against a wall, throw him to the floor and kicked and beat him, all such being in excess of that force necessary under the circumstances. Such behavior clearly violates a prisoner's constitutional right to be free from such unjustified assaults. As a matter of law no "good faith" defense was applicable in this action.

### Attorney's Fees

Section 1988 of Title 42, United States Code, provides in part:

> In any action or proceeding to enforce a provision .... [section] 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

Although the statute phrases the court's power as discretionary, recent cases have emphasized that in the absence of special circumstances, which would make the award of attorney's fees unjust, "attorney's fees should be awarded to the prevailing party as a matter of course." *Gates v. Collier*, 616 F.2d 1268, 1275 (5th Cir. 1980). The first question for decision, then, is whether Williams is the "prevailing party" as that term is used in § 1988.

The jury found that Bolt used excessive force against Williams in violation of his constitutional rights, but that Williams suffered no money damages as a result of that

violation.[3] Consequently, the Court is faced with determining whether the establishment of a constitutional violation coupled with an explicit finding that the violation caused no damages can support a conclusion that Williams prevailed on his federal civil rights claim so as to be entitled to the recovery of attorney's fees. The Court of Appeals for the Fourth Circuit has recently made the following observations concerning attorney's fees:

> If ... there is initially a genuine dispute as to whether the plaintiff fee claimant is a "prevailing party," inquiry on that question might well proceed first. This inquiry is properly a pragmatic one of both fact and law that will ordinarily range outside the merits of the basic controversy. Its initial focus might well be on establishing the precise factual legal condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden. With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff's fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.

*Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir. 1979).

▪ In the instant case Williams has received no tangible gain as a compensation for the constitutional violation. From a purely pecuniary point of view he has not moved from the "benchmark." At the same time, however, he has vindicated his constitutional rights by bringing this action and establishing a violation. "Without question a party who vindicates important rights 'prevails' for purposes of a § 1988 award, even though he or she does so without obtaining a formal judicial order." *Miller v. Carson*, 628 F.2d 346 (5th Cir. 1980).

This Court is of the opinion that Williams is a prevailing party for § 1988 purposes and is entitled to an award of attorney's fees.

▪ Considering Williams' compensation award for the assault and battery, *see* note 3, *supra*, the Court is of the opinion that, standing alone, such a recovery could not provide a basis for attorney's fees under § 1988. Although a number of cases have awarded attorney's fees after a plaintiff prevailed solely on a pendent state claim, those cases have invariably involved an intentional decision by a court to avoid a difficult constitutional question when recovery on a more well-established non-constitutional basis would fully compensate the plaintiff for his claimed injuries. *See Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980), citing at 1275, *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir. 1977). In the instant case the Court did not preclude the consideration of Williams' constitutional claims or make consideration of them in any way contingent on the outcome of Williams' assault and battery claims. The Court continues to be of the opinion that such a course was correct insofar as there is no necessary congruity between federal constitutional claims and state tort claims. It is well established that only a narrow range of state torts constitute federal civil rights offenses, *Williams v. Kelley*, 624 F.2d 695 (5th Cir. 1980), *and cases cited therein*, and consequently the Court could not infer from a simple recovery on an assault and battery claim that Williams "prevailed" on his civil rights claim, a prerequisite to recovery of attorney's fees under § 1988.

▪ As a final matter regarding the issue of whether Williams is a prevailing party, the Court would alternatively hold that, should Williams' uncompensated vindication on the constitutional claim prove somehow insufficient in itself to justify his designation as a prevailing party, the jury's finding as to the assault and battery,

---

**3.** As to the state assault and battery claim the jury found that Bolt committed an assault and battery against Williams and awarded $500 in compensation for his damages. For reasons set out previously, the jury's finding as to good faith cannot operate in this situation as a defense and Williams has clearly prevailed on this claim.

though itself alone insufficient to justify an award, taken in conjunction with the jury's finding of a constitutional violation arising out of precisely the same incident, supports the conclusion that Williams, by and large, prevailed on his § 1983 claim and is entitled to attorney's fees under § 1988.

Despite the contentions of Williams that attorneys fees may be assessed against the Dallas County Sheriff's Department or Dallas County, the Court must conclude that the assessment of fees must be against Bolt himself, who was sued, not in his official capacity, but individually. The cases cited by Williams in this regard in his Brief in Support of Motion for Judgment all deal with either the abrogation of eleventh amendment sovereign immunity by the congressional enforcement clause of the fourteenth amendment, or the liability of unnamed state or municipal entities for constitutional violations committed by public officials sued in their *official* capacity. The Court sees no reason why the assessment of attorney's fees should not be co-terminous with the assessment of substantive liability. There is also considerable doubt whether fees can be assessed against an entity never formally before the Court. *Cf. Dean v. Gladney*, 621 F.2d 1331 (5th Cir. 1980).

In determining an appropriate amount of attorney's fees the Court looks first to the relevant standards of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The facts of this action were not complex, Williams having charged that Bolt used excessive force against him while he was incarcerated at the Dallas County Jail. Customary fees in this area in cases such as this range from $3000 to $5000. As to results obtained, Williams recovered no damages on his constitutional claim and only $500 on his assault and battery claim. The claim against Sheriff Thomas was dismissed and the jury exonerated the defendant Smith, another detention officer. Williams' attorneys, associates of a large Dallas law firm, handled the case in a very competent manner, although the Court notes that this was the first federal jury trial for which Williams' lead counsel had full responsibility from beginning to end. Customary hourly rates for attorneys with experience equal to Williams' counsel range from $50 to $60. It was understood from the beginning that, should Williams lose his case, his counsel would take nothing, and the Court has taken this contingency factor into account. Further, considering all aspects of the case, the some 400 hours devoted by Williams' counsel to this action were excessive.

Although the ability of a plaintiff to pay his attorneys in cases such as this is largely irrelevant, *Bunn v. Central Realty of Louisiana*, 592 F.2d 891 (5th Cir. 1979), the hardship imposed on a losing defendant is a factor which a court may take into account, *Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980). In passing on the hardship that the assessment of a fee would have on Bolt, *Knighton v. Watkins, supra*, no evidence was introduced during the hearing on attorneys fees going to the ability of Bolt to pay such fees or Bolt's coverage by any insurance or other contractual indemnification arrangements. The Court may infer, however, that Bolt, as a county jail detention officer, is probably an individual of modest means who can ill afford to pay the full attorney's fee that this action might justify. The Court has also taken this into account in determining the fee to be assessed.

Taking the above factors into consideration, the Court is of the opinion that the sum of Two Thousand Five Hundred Dollars ($2500) is a reasonable attorney's fee and that said sum should be assessed as costs against Bolt for the use and benefit of Williams' counsel. The Court is aware that such fee award fails to fully compensate Williams' counsel for their time, but would hope that the experience gained will prove beneficial. The Court has had to take into consideration that in a suit primarily brought to recover money damages, this relatively modest attorney's fee award is still some five times more than the total damage recovery. All things considered, the Court feels that the above amount represents a fair and just fee. The prosecution

of this action by Williams' counsel who volunteered their services with little hope of remuneration represented selfless advocacy in the best tradition of the bar, which fact the Court here wishes to publicly acknowledge.

It is so ORDERED.